**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

DAMIEN COLEMAN,

Plaintiffs,

-against-

COUNTY OF NASSAU, MICHAEL T.
MORGAN, JOHN SCHMITT, SAMUEL
AUGELLO, RICHARD MAHEPATH, and
JOHN and JANE DOES 1-10,

Defendants.

-------------------------------------------------------------X

**MEMORANDUM DECISION**
**AND ORDER**

CV 16-6099 (JMW)

**WICKS, Magistrate Judge:**

I.  PRELIMINARY STATEMENT

Plaintiff Damien Coleman ("Plaintiff") commenced this action against the County of

Nassau and four Nassau County Police Officers, Michael Morgan ("Morgan"), John Schmitt

("Schmitt"), Samuel Augello ("Augello"), and Richard Mahepath ("Mahepath") (collectively,

"Defendants"), alleging various violations of his federal and state constitutional and common

law rights arising from a traffic stop and subsequent arrest and prosecution.  *See generally*

Complaint ("Compl.") (DE 1).

Before the Court is Defendants' motion for summary judgment, pursuant to Rule 56 of

the Federal Rules of Civil Procedure.  *See* Defendants' Memorandum in Support of their Motion

for Summary Judgment ("Defs.' Mem.") (DE 42-3); Defendants' Reply Memorandum in Further

Support of their Motion ("Defs.' Reply") (DE 43).  Needless to say, Plaintiff opposes the motion.

*See* Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Pl.'s Opp'n.")

(DE 44).  On March 29, 2019, Magistrate Judge A. Kathleen Tomlinson issued an order granting in part and denying in part the motion (*see* DE 55), with the proviso that "a written decision will be entered separately."   The case was then reassigned to the undersigned on October 25, 2021 and this Memorandum Decision and Order implements the previously issued Order of Judge Tomlinson (DE 55).

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED, in part, and DENIED, in part.

## II.   BACKGROUND

### A.     The Purported Material Facts

The following facts are drawn from Defendants' Rule 56.1(a) Statement of Undisputed Material Facts ("Defs.' SOMF") (DE 42-1), Plaintiff's Rule 56.1(b) Response to Defendants' Statement of Undisputed Material Facts ("Pl.'s 56.1(b) Response") (DE 47) and Plaintiff's Counterstatement of Additional Disputed Material Facts ("Pl.'s COMF") (DE 47), as well as the underlying factual record.  The relevant facts in this case are not overly complex, however, the parties plainly disagree on several key events.  Therefore, the Court first summarizes the facts which are clearly not in dispute, and then discusses those which are.  All facts are construed in the light most favorable to the party opposing summary judgment.  *See Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Capobianco v. New York*, 422 F.3d 47, 54-55 (2d Cir. 2005).

### 1.     *The Undisputed Facts*

On August 4, 2014, Plaintiff was driving in his vehicle with his cousin, Gregory Booker ("Booker"), who was seated in the passenger seat of the vehicle.  Pl.'s COMF ¶¶ 2, 4.  At approximately 11:55 p.m., Plaintiff and his cousin were pulled over by Defendant Police Officers

2

Morgan and Schmitt. *Id*. ¶¶ 2, 9. Plaintiff was allegedly pulled over for failing to signal before turning. *Id*. ¶ 36. Defendant Morgan approached the passenger side and Defendant Schmitt approached the driver's side. *Id*. ¶¶ 10-11. Defendant Schmitt then asked Plaintiff for his license, registration, and keys, which Plaintiff provided. *Id*. ¶¶ 12-13. Around this time, and before Plaintiff and Booker were asked to exit the vehicle, Defendant Police Officers Augello and Mahepath arrived at the scene. *Id*. ¶ 18. Defendant Schmitt instructed Plaintiff to exit the vehicle, which Plaintiff did. *Id*. ¶¶ 14-15; Defs.' SOMF ¶4; Pl.'s 56.1(b) Response ¶ 4. Around the same time, Booker also excited the vehicle. Pl.'s COMF ¶ 17. Plaintiff heard Defendant Morgan instruct Booker to stand at the rear of Plaintiff's vehicle so he could be searched. *Id*. ¶ 19. A search of both Plaintiff and Booker, as well as the car, was performed, and in the course of that search cocaine and marijuana were discovered. *See* Defs.' SOMF ¶¶ 1-3; Pl.'s 56.1(b) Response ¶¶ 1-3; Pl.'s COMF ¶¶ 21-22.

Both Plaintiff and Booker were subsequently arrested for narcotics possession. Defs.; SOMF ¶ 6; Pl.'s 56.1(b) Response ¶ 6; Pl.'s COMF ¶¶ 23, 27-28. Plaintiff was placed in the back of Defendants Augello and Mahepath's police vehicle and transported to the Nassau County Police Stations. Pl.'s COMF ¶ 25. Plaintiff was held in Nassau County Police Department's custody until he was arraigned two days later on August 6, 2014. *Id*. ¶ 30. Plaintiff was charged with one count of Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16(2), and one count of Criminal Possession of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.16(1), for possession of cocaine. *Id*. ¶ 31; Defs.' SOMF ¶ 6; Pl.'s 56.1(b) Response ¶ 6. Plaintiff was not charged with possession of marijuana. Pl.'s COMF ¶ 44. Bail was set at

$120,000, and Plaintiff was held in custody until bail was posted on his behalf by a bail bondsman. *Id.* ¶¶ 38-39.

Plaintiff was indicted by a grand jury on December 5, 2014. Defs.' SOMF ¶ 7; Pl.'s 56.1(b) Response ¶ 7; Pl.'s COMF ¶ 41. He subsequently hired a criminal defense attorney and appeared in court on approximately ten occasions in connection with his prosecution. Pl.'s COMF ¶¶ 46-47. Plaintiff's car was also impounded ancillary to the prosecution. *Id.* ¶ 48. On March 9, 2015, in ruling on a motion challenging the sufficiency of Plaintiff's indictment, the Nassau County Supreme Court found that (1) the evidence presented to the grand jury was sufficient to provide "reasonable cause" to believe Plaintiff had committed the offenses with which he was charged, and (2) "the conclusion reached by the grand jury was within the permissible inferences to be drawn from the evidence presented." Defs.' SOMF ¶ 8; Pl.'s 56.1(b) Response ¶ 8.

On June 22, 2015, Booker pleaded guilty to possession of a controlled substance and exculpated Plaintiff as part of his allocution. Defs.' SOMF ¶ 9; Pl.'s 56.1(b) Response ¶ 9; Pl.'s COMF ¶ 50. On August 4, 2015, the Nassau County District Attorney's Office moved to dismiss all charges against Plaintiff in furtherance of justice pursuant to New York Criminal Procedure Law § 210.40. Defs.' SOMF ¶ 10; Pl.'s 56.1(b) Response ¶ 10; Pl.'s COMF ¶ 49. The charges were dismissed and sealed on that same date. Defs.' SOMF ¶ 10; Pl.'s 56.1(b) Response ¶ 10; Pl.'s COMF ¶ 49.

### 2. *The Disputed Facts*

As becomes quickly apparent, the parties agree only as to a general chronology of events between the initial vehicle stop and the dismissal of Plaintiff's criminal prosecution. However, the factual details of several key events remain in dispute. The disputed facts generally concern two distinct sets of circumstances, including (1) those leading to Plaintiff's traffic stop, and (2)

4

those surrounding the search of Plaintiff's vehicle.  The Court examines the disputed facts surrounding each of these circumstances in turn.

### a.    The Traffic Stop

The parties sharply disagree over why Plaintiff's vehicle was pulled over on August 4, 2014.  Plaintiff states that "[p]rior to his arrest, plaintiff was lawfully operating his motor vehicle, a gray Nissan Altima, on Brookside Avenue."  Pl.'s COMF ¶ 3.  He specifically asserts that "[j]ust prior to being pulled over, [he] activated his turn signal and thereafter turned left on W. Centennial Avenue," and that he "observed a black SUV tailgating him, prior to turning left." *Id*. ¶¶ 6-7.  According to Plaintiff, this black SUV then activated its police lights and pulled over his vehicle.  *Id*. ¶ 8.  Plaintiff asserts that the traffic stop leading to his arrest was pretextual.  *See id*. ¶¶ 36-37 ("Plaintiff was . . . issued a traffic ticket signed by defendant Morgan which falsely alleged that Plaintiff failed to signal before turning off Brookside Avenue.  Plaintiff did in fact signal before turning.") (citations omitted).

Defendants did not responded to Plaintiff's Counterstatement, and their principal Rule 56.1(a) Statement of Material Facts does not assert any facts regarding the reason Plaintiff's vehicle was pulled over.  Nevertheless, based on the underlying record, including the traffic ticket itself and the deposition testimony of Defendant Morgan, the Court finds that Defendants dispute Plaintiff's contentions regarding the pretextual nature of the stop.  *See* Plaintiff's Traffic Ticket, attached as Exhibit 9 to the Declaration of Brett H. Klein, Esq. in Opposition to Defendants' Motion for Summary Judgment ("Klein Dec.") (DE 45) (stating in the box designated "DESCRIPTION / NARRATIVE" "Fail to Signal Left Turn."); *see also* Deposition Transcript of Defendant Morgan ("Morgan Dep.") at 53, attached as Exhibit C to the Declaration of Scott J. Kreppein, Esq. in Support of Defendants' Motion for Summary Judgment ("Kreppein

Decl.") (DE 42-2) ("[Plaintiff's] vehicle made a left turn to proceed eastbound on Centennial Avenue and it failed to signal its left turn.").

### b.    The Search of the Vehicle

The parties also disagree over how Plaintiff's vehicle was searched and what the search yielded.  Plaintiff asserts that no narcotics were present in plain view of his vehicle.  Pl.'s 56.1(b) Response ¶ 1; Pl's COMF ¶¶ 22, 33.  Rather, Plaintiff asserts that the narcotics were located in Booker's pockets, and it was only through the search of Booker outside of Plaintiff's vehicle that Defendants discovered the bag of cocaine and the marijuana cigarette.  Pl.'s COMF ¶ 22 ("Unbeknownst to plaintiff, Booker had a bag of cocaine and a marijuana cigarette concealed in his pants pockets, which defendant Morgan discovered during his search of Booker." [1]); *see id.* ¶ 33.

Defendants, on the other hand, maintain that the cocaine and marijuana were found inside Plaintiff's vehicle in plain view and not on Booker's person.  Specifically, Defendants state that "[a]pproximately 20 grams of cocaine was recovered from the passenger-side floorboard of Plaintiff's vehicle," and that "[a] marijuana cigarette / cigar was recovered from the front armrest of Plaintiff's vehicle."  Defs.' SOMF ¶¶ 2-3; *see* Pl.'s 56.1(b) Response ¶¶ 2-3.  Defendants further assert that because "Plaintiff was outside of the vehicle at the time the cocaine and marijuana were recovered[,] [he] did not observe where, specifically, the cocaine and marijuana were recovered from."  Defs.' SOMF ¶¶ 4-5.  As to these last two assertions, Plaintiff does not deny that he was outside the vehicle at the time the drugs were recovered, however, Plaintiff maintains that he "observe[d] defendant Morgan searching Booker," "observed Morgan place

---

[1]   Plaintiff asserts the marijuana cigarette was inside a Newport cigarette box which was inside Booker's pocket.  Pl.'s 56.1(b) Response ¶ 3.

something on the trunk of the car after searching Booker, and that he heard Booker yelling: 'this is for personal use.'"  Pl.'s 56.1(b) Response ¶¶ 4-5; *see* Pl.'s COMF ¶¶ 20-22.[2]

### B.    Relevant Procedural Background

Plaintiff commenced this action on November 2, 2016.  *See* (DE 1).  The Complaint asserts the following causes of action:  (1) false arrest pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) malicious prosecution pursuant to Section 1983; (3) deprivation of the right to a fair trial pursuant to Section 1983; (4) failure to intervene pursuant to Section 1983; (5) municipal liability pursuant to Section 1983 for false arrest, malicious prosecution, and deprivation of the right to a fair trial; (6) malicious prosecution pursuant to New York State law; (7) negligent screening, hiring, and retention pursuant to New York State law; (8) negligent training and supervision pursuant to New York State law; (9) common law negligence; and (10) violation of New York State Constitution Article 1 § 12.  *Id*. ¶¶ 32-84.

On April 11 and 12, 2018, Defendants' fully briefed motion for summary judgment was filed.  *See* (DE 42-47).  Thereafter, counsel for the parties appeared before Judge Feuerstein, who was then assigned to this case, for a status conference, at which time Plaintiff withdrew his Section 1983 municipal liability claims as well as his negligence claims.  *See* (DE 49).  Several days later, on June 11, 2018, the parties consented the Magistrate Judge's jurisdiction for all

---

[2] The disagreement over where and how the narcotics were found invariably leads to a disagreement between the parties over whether the evidence used against Plaintiff in the County's prosecution was truthful.  Plaintiff states that "Defendant Morgan swore out two felony complaints against plaintiff, and in said complaints, Morgan falsely swore that the cocaine was recovered from the front passenger side floor board."  Pl.'s COMF ¶ 32.  Similarly, Plaintiff asserts that "[d]uring his grand jury testimony, Morgan falsely testified that plaintiff failed to signal before turning onto W. Centennial Avenue, that he observed a marijuana cigarette in plain view on the armrest between the front seats, and that he observed a bag containing cocaine on the front passenger floorboard."  *Id*. ¶ 43.

purposes pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. *See* DE 51.

On March 29, 2019, Magistrate Judge Tomlinson, who was then assigned to this case, entered an Order granting, in part, and denying, in part, Defendants' motion for summary judgment and stated that a written decision will be entered separately. *See* (DE 55). After the untimely passing of Magistrate Judge Tomlinson, the case was reassigned to this Court on October 25, 2021. *See* October 25, 2021 Electronic Order. This Court now follows with the written decision on Defendants' motion for summary judgment.

### III.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); *Fishman by Fishman v. Daines*, 247 F. Supp. 3d 238, 244 (E.D.N.Y. 2017). To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party. *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005). In dispatching this task, a court need only consider "admissible evidence." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc*., 582 F.3d 244, 264 (2d Cir. 2009)).

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citations omitted); *Miller v. Nassau Health Care Corp.*, No. 09-CV-5128 (JFB)(AKT), 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Salahuddin*, 467 F.3d at 273 (citations omitted); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) (("[S]peculation alone is insufficient to defeat a motion for summary judgment.") (citation omitted)); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor.") (citation omitted). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal quotations and citations omitted). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Dobbs v. Dobbs*, No. 06-CV-6104 (KMK)(MDF), 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims[.]" (internal quotation marks and citation omitted)).

## IV.  DISCUSSION

Plaintiff's federal claims are each brought pursuant to 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere

conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).  To succeed on a claim under "Section 1983, a plaintiff must prove that '(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right.'"  *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 317 (E.D.N.Y. 2014) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)); *see also Agyeman v. Roosevelt Union Free Sch. Dist.*, 254 F. Supp. 3d 524, 532 (E.D.N.Y. 2017) (same).  There is no dispute that Defendants, as on-duty Nassau County Police Officers, were acting under color of state law during their interactions with Plaintiff.  As such, the Court's inquiry will focus on whether there exists a genuine dispute as to any material facts concerning the underlying constitutional claims, including false arrest, malicious prosecution, deprivation of the right to a fair trial, and failure to intervene.

### A.    False Arrest

"A false arrest claim under Section 1983, premised on an individual's right under the Fourth Amendment to be free from unreasonable seizures, 'is substantially the same as a claim for false arrest under New York law.'"  *Nardoni v. City of New York*, 331 F. Supp. 3d 116, 122 (S.D.N.Y. 2018) (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)).  "Under New York law, a plaintiff seeking to establish a cause of action for false arrest must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Id*. (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 70-71 (2d Cir. 2015)).  The existence of probable cause to arrest constitutes justification for the arrest and is therefore "a complete defense to an action for false arrest."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994)); *see also Heard v. City of*

10

*New York*, 319 F. Supp. 3d 687, 692 (S.D.N.Y. 2018) ("The existence of probable cause to arrest

constitute justification and is a complete defense to an action for false arrest, whether that action

is brought under state law of under § 1983") (quoting *Amore v. Novarro*, 624 F.3d 522, 536 (2d

Cir. 2010)).

"Probable cause to arrest a person exists if [a] law enforcement official, on the basis of

the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information

to justify a person of reasonable caution in believing that an offense has been or is being

committed by the person to be arrested."  *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir.

1990) (citing *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949)); *see also Amore*, 624 F.3d

at 536 (citation omitted).  Implicit in this inquiry is a requirement that the arresting officer have

acted in good faith.  *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("Where an

officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was

unlawful.  However, [t]his presumption is rebutted if, applying the reasonable, prudent person

test, the arresting officer, acting in good faith, had 'reasonable cause for believing the person to

be arrested to have committed [a crime].") (internal quotation marks and citations omitted).  The

"good faith" requirement does not convert the inquiry into one of the subjective intent of the

arresting officer; rather, the Court must determine "if, when the facts are construed in favor of

the plaintiff, the officer's probable cause determination was *objectively* reasonable."  *Id.*

(emphasis in original).  If the Court determines that "on the undisputed facts the officer would be

unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on

material issues of fact, then summary judgment is inappropriate for both New York and federal

false arrest claims."  *Id*.

11

Defendants move for summary judgment on Plaintiff's false arrest claim arguing that probable cause to arrest Plaintiff existed on two grounds.  First, Defendants contend that probable cause existed as a result of the subsequent indictment by a grand jury.  *See* Defs.' Mem. at 10.  However, "[t]he New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment 'applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions.'"  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 313, 373 N.Y.S.2d 87, 92-93 (1975) (alteration in original).  Therefore, Defendants' argument in this regard is erroneous as a matter of law.

Second, Defendants contend that probable cause to arrest Plaintiff existed because they discovered narcotics in Plaintiff's vehicle.  *See* Defs.' Mem. at 10; Defs.' Reply at 6.  Although Defendants' argument is vague, it is seemingly made on the presumption that the narcotics were indeed discovered in Plaintiff's vehicle in plain view.  In response, Plaintiff points to the factual dispute underlying the search and arrest and argues that if a jury finds that the narcotics were concealed on Booker's person rather than in plain view, no probable cause would exist to arrest Plaintiff.  *See* Pl.'s Opp'n. at 5-6.

As previously discussed, the factual dispute between the parties concern (1) whether Plaintiff used his turn signal (and, as a result, whether the traffic stop was lawful), and (2) the circumstances surrounding the search of Plaintiff's car (specifically, whether the narcotics retrieved from Plaintiff's vehicle at the time of the stop were located in Booker's pants pockets, or on the passenger-side floorboard and front arm-rest of Plaintiff's vehicle).  Therefore, the Court addresses each dispute in turn.

### 1.   *The Initial Traffic Stop*

If Plaintiff did in fact use his turn signal, and it was operational, Defendants would have lacked probable cause to believe Plaintiff had committed a traffic violation or some other offense, and would have had no probable cause to effect the traffic stop. *See Edwards v. Castro*, No. 16-CV-2383 (KMK), 2018 WL 4680996, at *5 (S.D.N.Y. Sept. 28, 2018) ("[Traffic] stops must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.") (quoting *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994)); *Holeman v. City of New London*, 425 F.3d 184, 189 (2d Cir. 2005) ("The temporary detention of an individual during a traffic stop is subject to limitation under the Fourth Amendment as a 'seizure' of the person." (citation omitted)).  However, "the legality of the traffic stop does not impact plaintiff's claim for false arrest." *Lawrence v. City Cadillac*, No. 10-CV-3324 (PKC), 2010 WL 5174209, at *5 (S.D.N.Y. Dec. 9, 2010).  "The Second Circuit . . . has held that the fruit of the poisonous tree doctrine may not be invoked to support a section 1983 civil action, because the doctrine 'is an evidentiary rule that operates in the context of criminal procedure . . . and as such has generally been held to apply only in criminal trials.'"  *Id.* (quoting *Townes v. City of New York,* 176 F.3d 138, 145 (2d Cir. 1999)); *see also Jenkins,* 478 F.3d at 91 n.16 (holding that "the fruit of the poisonous tree doctrine cannot be invoked to support a [s]ection 1983 claim" for false arrest where the plaintiff argued that arrest was unlawful because the initial stop was unlawful (citation omitted)); *Ellsworth v. Wachtel*, No. 11-CV-0381 (LEK)(CFH), 2013 WL 140342, at *8 (N.D.N.Y. Jan. 11, 2013) (dismissing a section 1983 false arrest claim where the plaintiff argued that an arrest following a unlawful stop was unconstitutional because "the fruit of the poisonous tree doctrine is not available to assist a [section] 1983 claimant") (citations omitted).

Therefore, although the dispute of fact over whether Plaintiff used his turn signal may be "genuine" in that a reasonable jury could find for Plaintiff, it is not a dispute of "material" fact because it does not ultimately impact whether probable cause existed to arrest Plaintiff.

## 2.   *The Search of Plaintiff's Vehicle*

Both parties' Rule 56.1 Statements, and motion papers generally, fail to adequately set forth the facts regarding Defendants' decision to remove Plaintiff and Booker from the vehicle and subsequently search their persons during the traffic stop.  For example, Defendants' Counterstatement states only that (1) Defendant Schmitt asked Plaintiff for his license, registration, and keys, (2) Plaintiff complied, (3) Plaintiff was instructed to exit the vehicle and (4) then was searched.  Pl.'s COMF ¶¶ 12-16.  Defendants' motion is similarly silent as to what, if anything, transpired when Defendants Morgan and Schmitt approached the vehicle and instructed Plaintiff and Booker to exit the vehicle.  *See* Defs.' Mem. at 1 ("On August 5, 2014, Plaintiff was pulled over by Officers Morgan and Schmitt for failure to signal during a left turn. After instructing Plaintiff and his passenger to exit the vehicle, Officer Morgan observed and recovered approximately 20 grams of cocaine from the passenger-side floorboard, as well as a marijuana cigarette from the front armrest of the vehicle.") (internal citation omitted).

Notwithstanding the parties' omissions in this regard, a review of the underlying record, including the transcript of Defendant Morgan's deposition, reveals that an odor of marijuana was allegedly emanating from Plaintiff's vehicle.  This observation, according to Defendant Morgan, prompted the instruction for Plaintiff and Booker to exit the vehicle.  *See* Morgan Dep. at 53: 9 - 15, Ex. C, Kreppein Decl.; *see also* Nassau County DA Inter-Department Memo ("DA Memo"), attached as Exhibit 3 to the Klein Decl.  Because Plaintiff has not pointed to any evidence in the record that rebuts Defendant Morgan's testimony that he detected the odor of marijuana upon

14

approaching Plaintiff's vehicle, there can be no genuine dispute as to this fact and the Court is obliged to accept it as true. *See Salahuddin*, 467 F.3d at 273.

Turning to the operative question,[3] drawing all reasonable inferences in Plaintiff's favor and accepting that the narcotics at issue were found in Booker's pockets, the Court concludes that under this version of events Defendants did not have probable cause to arrest Plaintiff.[4] "In addressing a section 1983 claim for false arrest, courts look to 'the law of the state in which the arrest occurred' to determine if the officers had probable cause to arrest the plaintiff for a violation of state law." *Haskins v. City of New York*, No. 15-CV-2016 (MKB), 2017 WL 3669612, at *5 (E.D.N.Y. Aug. 24, 2017) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)). Plaintiff was charged with criminal possession of a controlled substance in the third and seventh degree pursuant to New York Penal Law §§ 220.16 and 220.03. *See* Pl.'s COMF ¶ 31. An element of criminal possession of a controlled substance in the third and seventh degree is the "knowing and unlawful possess[ion]" of a controlled substance or its constituent parts. *See* N.Y. Penal Law §§ 220.03, 220.16. Constructive, rather than direct, possession of narcotics may exist "when a person has the power and intention to exercise dominion and control over an object." *United States v. Facen*, 812 F.3d 280, 286-87 (2d Cir. 2016) (quoting *United States v. Payton*,

---

[3] The Court does not address the lawfulness of the search that led to discovery of the narcotics. Even if the search was unlawful and violative of Booker's Fourth Amendment rights, as already discussed the "fruit of the poisonous tree" doctrine is inapplicable to impact the lawfulness of Plaintiff's subsequent arrest.

[4] Defendants argue that New York law has a "'broad definition' of possession," which "does not require actual physical contact, but merely 'dominion or control over the property by a sufficient level of control over the area which the contraband is found or over the person from whom the contraband is seized.'" Defs.' Reply at 3. Under this broad definition, they contend, "the police had probable cause to believe that the drugs were knowingly possessed by both the Defendant and his cousin, jointly." *Id.*

159 F.3d 49, 56 (2d Cir. 1998)).  In the context of narcotics in an apartment or home,[5] both the

Second Circuit and New York courts have found that constructive possession requires facts that

show "(1) the defendants were aware of and complicit in the illegal activity, (2) the contraband

was in plain view, (3) police officers knew that the defendants were residents of the apartment or

home containing the contraband, or (4) the defendants exercised dominion and control over the

area containing the narcotics and were not just in proximity to the location of the narcotics."

*Haskins*, 2017 WL 3669612, at *6 (citing *United States v. Rodriguez*, 392 F.3d 539, 548-49 (2d

Cir. 2004); *Jenkins v. City of New York*, No. 10-CV-4535 (AJN), 2013 WL 870258, at *8-11

(S.D.N.Y. Mar. 6, 2013); *People v. Headley*, 143 A.D.2d 937, 938, 533 N.Y.S.2d 562, 563 (2nd

Dep't 1988) *aff'd* 74 N.Y.2d 858, 547 N.E.2d 82, 547 N.Y.S.2d 827 (1989)).

　　　Applying the law of New York as it relates to possession of narcotics, the Court finds

that, accepting Plaintiff's version of events as true, Defendants lacked probable cause to impute

possession of the narcotics to Plaintiff and therefore lacked probable cause to arrest.  The district

court's decision in *Campbell v. City of New York*, No. 16-CV-7201 (NGG) (SMG), 2019 WL

569768, at *5-7 (E.D.N.Y. Feb. 11, 2019), is instructive here.  In *Campell*, the district court

denied a motion for summary judgment on plaintiff's false arrest claim where plaintiff, as the

driver of a vehicle, was found to have constructively possessed marijuana which she alleged was

located exclusively on the person her passenger.  *Id.*  Analogous to the situation here, the

defendants in *Campell* claimed that the arresting officer recovered marijuana from the center cup

holder and the driver's seat of the vehicle, while plaintiff maintained that the marijuana was

---

[5] The Court recognizes the legal distinctions between a home and an automobile in the context
of the Fourth Amendment.

recovered from solely from the persons of her passenger.  *Id*. at *2 (citation omitted).  As to the

issue of constructive possession, the district court in *Campbell* stated as follows:

> Defendants argue that Munoz had probable cause to believe that
> Plaintiff criminally possessed marijuana, and that this probable
> cause justified the arrest. . . .  Defendants base their argument for
> probable cause entirely on the presence of marijuana in public view
> inside the car . . . .  However, as noted above, Plaintiff disputes this
> fact.  [The vehicle's passenger] agrees with Plaintiff.  If there was
> not marijuana in public view, Defendants' argument for probable
> cause collapses:  [The arresting officer] would not have observed
> marijuana in Plaintiff's car within reach, and would not reasonably
> have been able to impute constructive possession of marijuana to
> Plaintiff.  Thus, if a jury credits Plaintiff's version of events, it could
> reasonably find that Munoz did not have probable cause for the
> arrest.

*Id*. at *6-*7 (citing *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 435-36 (W.D.N.Y. 2018); *Gonzalez v.*

*Del. Cty*., No. 17-CV-373 (LEK)(DEP), 2017 WL 6001823, at *7 (N.D.N.Y. Dec. 4, 2017)).

This Court finds the reasoning of *Campbell* persuasive here; if the narcotics at issue were located

exclusively in Booker's pockets,[6] Defendants would not have probable cause to constructively

impute the possession of the narcotics to Plaintiff and summary judgment on this basis would not

be warranted on Plaintiff's false arrest claim.

### 3.    *Qualified Immunity*

Alternatively, Defendants argue that even if they lacked probable cause to arrest Plaintiff,

they are entitled to qualified immunity because under the undisputed facts there was "arguable

probable cause" to arrest Plaintiff.  *See* Defs.' Mem. at 9; Defs.' Reply at 8.  "A police officer is

entitled to qualified immunity shielding him from a claim for damages for false arrest or

---

[6] To the extent Defendants argue that there is insufficient evidence to great a genuine factual
dispute, the Court finds the first-hand testimony of Plaintiff and Booker to be sufficient.  *Cf.*
*Campbell*, 2019 WL 569768, at *4 (explaining that defendant-police officers "erroneously assert
that they are entitled to summary judgment on the grounds that Plaintiff has not submitted any
evidence beyond her own testimony").

malicious prosecution if either (1) it was objectively reasonable for the officer to believe that there was probable cause for the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause for the arrest." *Campbell*, 2019 WL 569768, at *9 (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) and *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019) ("The doctrine of qualified immunity protects 'government officials performing discretionary functions' from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In deciding whether an officer's conduct was objectively reasonable ..., we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer." *Id.* (citing *Amore*, 624 F.3d at 536 (alterations in original)).

Based on the record presented, the Court concludes that all four Defendants are entitled to qualified immunity as to Plaintiff's false arrest claim. First, although it is not clear from the facts which Defendant effected Plaintiff's arrest, there are no facts from which a reasonable jury could conclude that is not objectively reasonable to believe probable cause existed or that reasonably competent officers could disagree as to whether probable cause existed. Key to the Court's conclusion is Defendant Morgan's testimony that he smelled marijuana emanating from the vehicle. If this is correct – and the Court must accept it to be since Plaintiff does not offer rebuttal evidence – Defendants could have reasonably believed that it was possible that Plaintiff

was participating in the use of marijuana.[7]  Even if unlawful, imputing constructive possession to

Plaintiff under these circumstances would not have been objectively unreasonable.[8]

Additionally, the Court notes that even if Defendants Augello and Mahepath were at the

scene of the traffic stop prior to the search that led to the discovery of the narcotics as Plaintiff

claims, *see* Pl.'s COMF ¶¶ 18, 26, there are simply too few facts to connect them to any

constitutional violation related to Plaintiff's arrest.  Indeed, it appears that the extent of the

involvement of Defendants Augello and Mahepath was (1) their presence at the scene of the

arrest and (2) their transportation of Plaintiff to the police station.  *See* Pl.'s COMF ¶ 25.  As a

result, the Court finds there is no "genuine" factual dispute that can preclude a grant of qualified

immunity to these Defendants.[9]  And, for reasons discussed above, even if they were directly

---

[7] By contrast, in *Campbell* where Judge Garaufis denied defendants qualified immunity under similar circumstances, there was no evidence at all connecting the driver to the use or possession of the marijuana.  *See* 2019 WL 569768, at *9.

[8] The Court recognizes that Plaintiff was ultimately charged with the possession of cocaine and not marijuana. However, probable cause does not have to be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer." *Guan v. City of New York*, No. 18-CV-2417 (GBD)(BCM), 2020 WL 6365201, at *3 (S.D.N.Y. Oct. 29, 2020) (quoting *Jaegly*, 439 F.3d at 153).

[9] Another way of analyzing the qualified immunity inquiry with respect to Defendants Augello and Mahepath is in recognizing that Plaintiff has failed to satisfy the "personal involvement" element of a Section 1983 claim as to these Defendants.  It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019) (citation and quotations omitted); *see also Bell v. NYC*, No. 18-CV-1081 (BMC), 2018 WL 1054378, at *1 (E.D.N.Y. Feb. 23, 2018) ("[To sustain a claim brought under Section 1983], he must allege the direct direct or personal involvement of each of the named defendants in the alleged constitutional deprivation.") (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)). The absence of personal involvement of Augello and Mahepath both negates their Section 1983 liability and entitles them to qualified immunity, the two being part-and-parcel of one another. This reasoning applies in each instance where the Court grants Defendants Augello and Mahepath qualified immunity.

engaged in Plaintiff's arrest, the imputing constructive possession of the narcotics to Plaintiff

was not so unreasonable given the circumstances so as to deprive them of qualified immunity.

In sum, while genuine disputes of material fact exist, it cannot be said that Defendants'

"judgment was so flawed that no reasonable officer would have made a similar choice"

in arresting Plaintiff.  *Chevalier v. City of New York*, No. 18-CV-5048 (CS), 2020 WL 1891925,

at *8 (S.D.N.Y. Apr. 16, 2020) (quoting *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995)).  It is

simply not the case that every reasonable officer would agree that Plaintiff's conduct

was not criminal.  Accordingly, each Defendant is entitled to qualified immunity, and

Defendants' motion for summary judgment as to Plaintiff's false arrest claim is GRANTED.

### B.    Malicious Prosecution

Plaintiff asserts a claim for malicious prosecution under federal law, *see* Compl. ¶¶ 36-

39, as well as New York law.  *See id.* ¶¶ 65-69.  "The Fourth Amendment right implicated in a

malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.,*

the right to be free of unreasonable or unwarranted restraints on personal liberty."  *Singer v.

Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).  To successfully maintain a Section 1983

malicious prosecution claim alleging deprivations of Fourth Amendment rights, a plaintiff must

be able to prove the elements of malicious prosecution under state law.  *Manganiello v. City of

New York*, 612 F.3d 149, 161 (2d Cir. 2010).  Under New York law, a plaintiff claiming

malicious prosecution must prove "(1) the initiation or continuation of a criminal proceeding

against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause

for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."

*Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citing *Manganiello*, 612

F.3d at 160-61); *see also Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).  Just as with a claim

for false arrest, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino*, 331 F.3d at 72 (citation omitted).

Defendants move for summary judgment on Plaintiff's two malicious prosecution claims, contending, as they did with Plaintiff's false arrest claim, that the undisputed facts establish the existence of probable cause; in this case probable cause to prosecute. *See* Defs.' Mem. at 6. Defendants also argue that there is no evidence of malice, and that there was no favorable termination of Plaintiff's prosecution on the merits because "a dismissal in the interest of justice is neither an acquittal of the charges nor any determination of the merits." *Id*. at 10-12; Defs.' Reply at 9-11. Because neither side disputes that the first element of Plaintiff's malicious prosecution claims – the initiation of criminal proceedings – has been satisfied, the Court will limit its discussion to the three remaining elements of his claims.

### 1. *Probable Cause*

Unlike with a false arrest claim, in the context of a malicious prosecution claim, an "indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72 (emphasis in original) (quoting *Colon v. City of New York,* 60 N.Y.2d 78, 83, 455 N.E.2d 1248, 1251, 468 N.Y.S.2d 453, 456 (1983)); *see Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003). In light of the rebuttable presumption, the question becomes the following: because the Court has already determined that a reasonable jury could find Plaintiff's version of events to be true (and consequently that Defendants' lacked probable cause to arrest Plaintiff), is the evidence upon which a jury would make such a determination – primarily the first-hand accounts of Plaintiff

21

and Booker – sufficient in and of itself to rebut the presumption of probable cause created by Plaintiff's indictment?  The Court concludes that, under the circumstances of this case, it is.

The Second Circuit's decision in *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) is instructive here.  In *Boyd*, the Second Circuit reversed the district court's granting of summary judgment in favor of defendant-police officers on plaintiff's malicious prosecution claim where there existed a dispute as to what transpired at the time of plaintiff's arrest.  *Id*. at 78.  The Second Circuits' ruling hinged on the fact that the only evidence supporting plaintiff's indictment for criminal possession of stolen property was the officers' testimony that plaintiff had made an incriminating statement outside of his apartment prior to being arrested.  *Id*. at 74.  Plaintiff disputed this contention, arguing that he made the statement inside of his apartment after his arrest and prior to being given a *Miranda* warning and, consequently, the statement was inadmissible.  *Id*.  Significantly, the police's on-line booking system arrest worksheet, which was completed by the police, indicated that plaintiff was arrested inside his apartment, corroborating the plaintiff's assertion that the incriminating statement was made after he had been arrested.  *Id*. at 77.  The Second Circuit in *Boyd* found that "[w]hen we consider the booking sheet and [plaintiff's] testimony in combination with the police testimony, we move beyond a simple conflict of stories or mistaken memories, and into the possibility that the police knew where they arrested [plaintiff], but lied in order to secure an indictment."  *Id*.  The Second Circuit concluded that "[a]t this preliminary stage, construing all inferences in the light most favorable to [plaintiff], a jury could reasonably find that the indictment was secured through bad faith or perjury, and that there was malicious prosecution of [plaintiff].  Therefore, the issue of probable cause cannot be resolved by summary judgment."  *Id*.

The Second Circuit in *Boyd* established what has come to known as the "competing testimony plus" standard to assess whether a malicious prosecution plaintiff has sufficiently rebutted the presumption of probable cause created by his indictment. *Id.*; *see*, *e.g., Watson v. Grady*, No. 09-CV-3055 (NSR), 2015 WL 2168189, at *16 (S.D.N.Y. May 7, 2015), *aff'd sub nom. Watson v. Sims*, 648 F. App'x 49 (2d Cir. 2016); *Greene v. City of New York*, No. 08-CV-00243 (AMD)(CLP), 2017 WL 1030707, at *22 (E.D.N.Y. Mar. 15, 2017), *aff'd*, 742 F. App'x 532 (2d Cir. 2018); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010). Under this standard, "where a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than 'mere conjecture and surmise that [the plaintiff's] indictment was procured as a result of conduct undertaken by the defendants in bad faith,' which is insufficient to rebut the presumption of probable cause." *Brandon*, 705 F. Supp. 2d at 273 (*quoting Reid v. City of New York,* No. 00-CV-5164, 2004 WL 626228, at *7 (S.D.N.Y. Mar. 29, 2004)) (alteration in original); *see also Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013). Some additional corroboration, or "plus factor," is generally required. *Id.* at 274; *see also McClellan v. Smith,* 439 F.3d 137, 146 (2d Cir. 2006) (finding a defendant police officer's several variations of his version of events to be a sufficient plus factor to rebut the presumption).

Like *Boyd,* the Court is presented with two competing factual narratives. Under the "competing testimony plus" standard, Plaintiff's testimony that (1) he used his turn signal and (2) the narcotics were not in the vehicle at large but on Booker's pockets, would not, by itself, be sufficient to rebut the presumption of probable cause created by his indictment. However, Plaintiff's version of events is at least somewhat corroborated by Booker's testimony that the narcotics were in his pockets and Plaintiff was not aware of them. *See* Booker Decl. ¶¶ 5-7.

Moreover, Booker's testimony, and Plaintiff's narrative more generally, is consistent with and additionally corroborated by Booker's plea and allocution that the narcotics were located in his pocket, that Plaintiff did not have any knowledge of the narcotics in the car, and that "he [Booker] alone possessed the cocaine." DA Memo, Ex. 3, Klein Decl. The Court finds that Plaintiff's testimony, when corroborated by Booker's testimony and allocution, is sufficient to rebut the presumption of probable cause created by Plaintiff's indictment and, as a result, creates an issue of fact for a jury. *See Garnett v. City of New York*, No. 13-CV-7083 (GHW), 2014 WL 3950904, at *10 (S.D.N.Y. Aug. 13, 2014) (explaining that while plaintiff's testimony alone would be insufficient to overcome the presumption of probable cause under *Boyd,* plaintiff's version of events were "at least partially corroborated" by an eye witness who testified that plaintiff "never entered the store, never made any statements, and was not involved in the drug transaction").

       **2.**    ***Malice***

      With respect to the malice element of the malicious prosecution claim, "[a] lack of probable cause generally creates an inference of malice." *Manganiello*, 612 F.3d at 163 (quoting *Boyd*, 336 F.3d at 78) (alteration in original); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) ("[L]ack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." (citation omitted)). Here, because the Court has determined that there is a genuine dispute of material fact with respect to probable cause, the Court also finds that under Plaintiff's version of events, malice can be inferred.

### 3.   *Termination of Proceedings in Plaintiff's Favor*

"New York law does not require a malicious prosecution plaintiff to prove his innocence,

or even that the termination of the criminal proceeding was indicative of innocence.  Instead, the

plaintiff's burden is to demonstrate a final termination that is not inconsistent with innocence."

*Genovese v. Cty. of Suffolk*, 128 F. Supp. 3d 661, 671 (E.D.N.Y. 2015) (citing *Cantalino v.*

*Danner*, 96 N.Y.2d 391, 396, 754 N.E.2d 164, 167-68, 729 N.Y.S.2d 405, 408-09 (2001)).

"[D]ismissals that have been found to be inconsistent with innocence . . . fall into three

categories: (1) misconduct on the part of the accused in preventing the trial from going forward,

(2) charges dismissed or withdrawn pursuant to a compromise with the accused, and (3) charges

dismissed or withdrawn out of mercy requested or accepted by the accused."  *Franks v. Wittick*,

No. 15-CV-6178 (RRM)(JO), 2018 WL 4719338, at *7 (E.D.N.Y. Sept. 28, 2018) (quoting

*Armatas v. Maroulleti*, No. 08-CV-310 (SJF)(RER), 2010 WL 4340437, at *13 (E.D.N.Y. Oct.

19, 2010)) (alterations in original).

Defendants assert that the charges against Plaintiff "were dismissed in the furtherance of

justice pursuant to Criminal Procedure Law § 210.40."  Defs.' SOMF ¶ 10.  They cite the file

jacket of Plaintiff's criminal file, which has the following hand-written notation under

"DISPOSITION":  "dis entire indictment – CPL 201.40. * co-Δ pled guilty, stated during

allocution that this Δ had no idea the drugs were in the car, it was co- Δs drugs – exculpating this

Δ."  File Jacket, attached as Exhibit K to the Kreppein Decl.  Defendants contend that the New

York Court of Appeals' decision in *Cantalino* is inapplicable to the facts of this case.  *See* Defs.'

Reply at 5-7.  In *Cantalino*, the Court of Appeals rejected a "*per se* rule that a dismissal in

the interest of justice can never constitute a favorable termination."  *Cantalino*, 96 N.Y.2d at

396, 754 N.E.2d at 167-68, 729 N.Y.S.2d at 408-09.  Instead, courts must apply a "case-specific

rule," under which "the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Id*. The Court of Appeals went on to explain that "[a] dismissal in the interest of justice is inconsistent with innocence [where] it represents mercy requested or accepted by the accused." *Id*. (internal quotation marks and citations omitted).

The Court need not engage in an in-depth analysis of the applicability of *Cantanilo* to the facts of this case because the Certificate of Disposition expressly states that the dismissal of charges against Plaintiff "is a termination of the criminal action *in favor of the accused*." Certificate of Disposition, attached as Exhibit 15 to the Klein Decl. (emphasis added). In light of the Certificate of Disposition, the Court finds that not only was the dismissal of Plaintiff's prosecution "not inconsistent" with innocence, but it was actually consistent with Plaintiff's innocence.

Even if the Certificate of Disposition was not enough, the reasoning underlying the decision of District Attorney's Office to discontinue its prosecution, in its own words, further undercuts Defendants' position. The County found that Booker's allocution "exculpated" Plaintiff in that Booker stated the narcotics were his and were located in his pocket, and Plaintiff did not know the narcotics were in the car. *See* DA Memo, Ex. 3, Klein Decl.; *see also* File Jacket, Ex. K, Kreppein Decl. Black's Law Dictionary defines exculpate as follows: "To free from blame or accusation; esp., to prove not guilty. Cf. Exonerate." *Exculpate*, BLACK'S LAW DICTIONARY (10th ed. 2014). Notwithstanding Defendants' assertion that the District Attorney's Office was "not required to credit Mr. Booker's exculpatory statements," Defs.' Reply at 6, the evidence shows that it clearly did. Indeed, this appears to have formed the sole justification for its decision to discontinue Plaintiff's prosecution.

Therefore, the Court finds as a matter of law[10] that the dismissal in the interest of justice of the charges against Plaintiff constitutes a "favorable termination" for purposes of Plaintiff's malicious prosecution claims.[11]

### 4. *Qualified Immunity*

The Court finds that Defendant Morgan is not entitled to qualified immunity because there exists a genuine dispute of material fact as to where the narcotics were located at the time of the search – either in plain view within the vehicle, or in Booker's pockets. If a jury were to find Plaintiff's version of the facts to be true, it would necessarily imply that at least some of the information given to prosecutors by Morgan was false.[12]  *See* DA Memo, Ex. 3, Klein Decl. ("PO Morgan observed and recovered a large, white piece of cocaine in a piece of plastic on the passenger side floorboard."); *see also* Nassau County DA Summary ("DA Summary"), attached as Exhibit 6 to the Klein Decl.  Making false statements in furtherance of a prosecution is a violation of an accused's clearly established Fourth Amendment rights, and as such is not protected by qualified immunity.  *See Manganiello*, 612 F.3d at 165 (upholding district court's

---

[10] The "favorable termination" prong of a malicious prosecution claims ordinarily presents a question of law for the Court. *See Genovese*, 128 F. Supp. 3d at 672.  However, if there are questions of law as to the reasoning underlying a dismissal, they must be presented to a jury. *Id*. Consequently, even if the facts did not clearly indicate the District Attorney's reasoning in dismissing Plaintiff's charges, they would need to be presented to a jury, and Defendants would not be entitled to summary judgment as to Plaintiff's malicious prosecution claims.

[11] Given the weight of the evidence indicating that the dismissal was in Plaintiff's favor, the Court struggles to understand how Defendants' counsel can in good faith assert the contrary.

[12] Plaintiff states that Defendant Morgan falsely testified before the grand jury that Plaintiff failed to use his turn signal and that he narcotics were within the vehicle at large rather than in Booker's pockets.  *See* Pl.'s COMF ¶ 43.  However, grand jury witnesses, including police officers, have absolute immunity with respect to Section 1983 claims arising from that testimony.  *Coggins v. Cty. of Nassau*, 988 F. Supp. 2d 231, 244 (E.D.N.Y. 2013), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015).

denial of qualified immunity where a jury found that a police officer made false statements and misrepresented evidence to prosecutors); *cf. Aguirre v. City of New York*, No. 15-CV-6043 (PKC), 2017 WL 4236552, at *9 (E.D.N.Y. Sept. 22, 2017) ("[G]iven that Alexander completed an arrest report in furtherance of Plaintiff's arrest, which allegedly contained false information that was 'likely to influence a jury's decision,' the Court denies Defendants' summary judgment motion as to Plaintiff's malicious prosecution claim against Alexander." (citations omitted)).

As to the other three Defendants, even under Plaintiff's version of events, there are almost no facts supporting these Defendants' involvement in Plaintiff's prosecution. Therefore, for the reasons previously discussed, these defendants are entitled to qualified immunity or, alternatively, cannot be held liable under Section 1983 in the first instance.[13]

In sum, the Court finds that there exist genuine disputes of material fact underlying Plaintiff's malicious prosecution claims, particularly as to whether probable cause existed to prosecute. The Court further finds that Defendant Morgan is not entitled to qualified immunity as to Plaintiff's malicious prosecution claim at this time, while the three remaining Defendants are. Accordingly, Defendants' motion for summary judgment as to Plaintiff's federal and state malicious prosecution claims is therefore GRANTED with respect to Defendants Schmitt, Augello, and Mahepath, and DENIED with respect to Defendant Morgan.

## C. Deprivation of the Right to a Fair Trial

Plaintiff asserts a Section 1983 claim for deprivation of the right to a fair trial. *See* Compl. ¶¶ 40-44. "[W]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in

---

[13] *See supra* note 10.

an action for damages under 42 U.S.C. § 1983." *Crespo v. Rivera*, No. 16-CV-0708 (PGG),

2018 WL 4500868, at *12 (S.D.N.Y. Sept. 19, 2018) (quoting *Jocks v. Tavernier*, 316 F.3d 128,

138 (2d Cir. 2003)). "To prevail on a denial of fair trial claim, a plaintiff must show that 'an (1)

investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4)

forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a

result.'" *Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (quoting

*Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)).

 As previously discussed, there exists a genuine dispute of material fact as to whether the

narcotics at issue were located in plain view within Plaintiff's vehicle, or in Booker's pockets.

According to Plaintiff, Defendant Morgan misrepresented where he discovered the narcotics,

informing the District Attorney's Office that he found the narcotics in plain view within

Plaintiff's vehicle. This representation would likely influence a jury's decision on Plaintiff's

narcotics possession charge, and it undoubtedly led to a deprivation of Plaintiff's liberty. A jury

could determine that Plaintiff's version of facts is correct, in which case, and for substantially the

same reasons as with his malicious prosecution claim, Plaintiff could be able to prove each of the

elements of his fair trial claim.[14] Moreover, the alleged misrepresentation by Defendant Morgan

as to where he discovered the narcotics would constitute a violation of Plaintiff's clearly

established constitutional rights. *See Crespo*, 2018 WL 4500868, at *12. Therefore, qualified

immunity is not available to Defendant Morgan at this time. However, as discussed in the

---

[14] As Judge Chen recently observed, "[t]here is a disagreement in this Circuit" as to whether a
plaintiff needs to have gone to trial to sustain a claim for deprivation of the right to a fair trial.
*Aguirre*, 2017 WL 4236552, at *10. "Although some district courts . . . find it necessary that a
plaintiff has gone to trial in order to sustain a fair trial claim, this Court has previously found that
'[a] plaintiff need not have gone to full trial on the merits in order to have an actionable Section
1983 claim based on the denial of a fair trial.'" *Id.* (quoting *Ying Li v. City of New York.*, 246 F.
Supp. 3d 578, 626 (E.D.N.Y. 2017)).

context of Plaintiff's malicious prosecution claim, there are few if any facts to support any allegation regarding the conduct of the remaining Defendants with respect to Plaintiff's criminal prosecution.  There are no assertions supported by the record presented that any other Defendant made false statements or otherwise influenced Plaintiff's criminal prosecution.  Because there is no genuine factual dispute with respect to the conduct of these Defendants, they are entitled to qualified immunity as to Plaintiff's claim for deprivation of the right to a fair trial.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's deprivation of the right to a fair trial claim is therefore GRANTED with respect to Defendants Schmitt, Augello, and Mahepath, and DENIED with respect to Defendant Morgan.

### D.   Failure to Intervene

Plaintiff also asserts a Section 1983 claim for the failure to intervene, alleging that Defendants failed to intervene to prevent the other Defendants' conduct which he alleges deprived him of his constitutional rights.  *See* Compl. ¶¶ 40-44.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 477 (W.D.N.Y. 2017) (quoting *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994)).  "To establish a claim for failure to intervene, a plaintiff must show (i) [an] officer's failure 'permitted fellow officers to violate [plaintiff's] clearly established statutory or constitutional rights,' and (ii) it was 'objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights.'" *Buchy v. City of White Plains,* No. 14-CV-1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)).

Plaintiff contends that all four Defendants should have known probable cause to arrest was lacking because, "[v]iewing the facts in a light most favorable to [him], all four defendants were present at the point that plaintiff and Booker were asked to step out of plaintiff's vehicle, and therefore were present when the drugs were recovered on Booker."[15]  Pl.'s Opp'n. at 15. The Court finds that there are insufficient facts from which a reasonable jury could conclude that it was "objectively unreasonable" for any Defendant to fail to intervene in Plaintiff's arrest. Indeed, because the Court has concluded that while perhaps unlawful, Plaintiff's arrest was not so unreasonable so as to preclude qualified immunity as to any Defendant, it necessarily follows that it was not objectively unreasonable for each Defendant to decline to intervene in the arrest.

Defendants' motion for summary judgment as to Plaintiff's failure to intervene claim is therefore GRANTED.

### E.   New York State Constitution Article 1 § 12

Plaintiff asserts a cause of action under the New York State Constitution for unreasonable search and seizure.  *See* Compl. ¶¶ 81-84.  It is not clear to what extent Plaintiff is attempting to maintain this claim; nor is it clear to what extent Defendants' motion for summary judgment seeks dismissal of this claim.  Regardless, this claim is not cognizable as an independent cause of action in light of Plaintiff's remedy under Section 1983.  *See Ying Li*, 246 F. Supp. 3d at 639 ("Plaintiff's State constitution claims must be dismissed because '[d]istrict courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983.'" (quoting *Campbell v. City of*

---

[15] The Court construes Plaintiff to only be asserting his failure to intervene claim with respect to the violation of his Fourth Amendment rights caused by his alleged false arrest, and does not address what, if any other constitutional rights according to Plaintiff, Defendants should have intervened to protect.

*New York*, No. 09-CV-3306 (FB)(JO), 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011)).

Accordingly, Plaintiff's claim under the New York State Constitution is DISMISSED.

### F.     Remaining Claims

Although Defendants' motion addresses the viability of Plaintiff's Section 1983

municipal liability and negligence claims, those claims have since been withdrawn.  *See* (DE 49).

Accordingly, the Court does not address them here.

### V.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, in

part, and DENIED, in part.  Plaintiff's malicious prosecution claim and fair trial claim shall

proceed to trial solely as to Defendant Morgan.  All remaining claims are hereby DISMISSED.


**SO ORDERED.**

Dated: Central Islip, New York
          November 22, 2021

          /s/ *James M. Wicks*
          JAMES M. WICKS
          U.S. Magistrate Judge